**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 27 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| GABINO ROSALES, individually and as successor in interest to Jorge Rosales; MARIA OLIVIA ROSALES, individually and as successor in interest to Jorge Rosales, <br><br> Plaintiffs - Appellants, <br><br> v. <br><br> COUNTY OF LOS ANGELES, a municipality; LEANDRO CHAVERRA, an individual; JAVIER TISCARENO, an individual; FRANKLIN NOVELO, an individual; MARK TADROUS, an individual, <br><br> Defendants - Appellees. | No. 14-55859 <br><br> D.C. No. 2:13-cv-07262-SVW-AGR <br><br><br> MEMORANDUM[*] |
| GABINO ROSALES, individually and as successor in interest to Jorge Rosales; MARIA OLIVIA ROSALES, individually and as successor in interest to Jorge Rosales, <br><br> Plaintiffs - Appellants, <br><br> v. | No. 14-55860 <br><br> D.C. No. 2:12-cv-03852-SVW-AGR |

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

COUNTY OF LOS ANGELES, a municipality; LEANDRO CHAVERRA, an individual; JAVIER TISCARENO, an individual; FRANKLIN NOVELO, an individual; MARK TADROUS, an individual,

Defendants - Appellees.

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted May 3, 2016
Pasadena, California

Before: FISHER, M. SMITH and NGUYEN, Circuit Judges.

Gabino and Maria Olivia Rosales appeal from an adverse summary judgment in their 42 U.S.C. § 1983 suit arising out of the death of their 18-year-old son Jorge Rosales, who died of acute hemorrhagic pancreatitis some 39 hours after being subjected to a forcible takedown by four deputies in the mental health unit of the Los Angeles County Jail. The district court concluded Rosales' parents could not establish their claims for excessive force, deprivation of familial relationship and denial of medical care. We have jurisdiction under 28 U.S.C. § 1291, and we reverse on the excessive force claim and affirm on the other two claims.

1. We review the grant of summary judgment de novo and ask whether there are any genuine disputes of material fact when the evidence is viewed in the

2

light most favorable to the nonmoving party. *See Gonzalez v. City of Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014) (en banc). In excessive force cases, however, summary judgment should be granted "sparingly," especially where the only witness who could contradict the officers – here, Rosales – is now dead. *Id.* at 794-95. We "may not simply accept what may be a self-serving account" by the deputies, but "must also look at the circumstantial evidence that, if believed, would tend to discredit [their] story." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). Because a jury should decide whether to credit the deputies or the circumstantial evidence in this case, we reverse and remand for trial on the excessive force claim.

    **a.**    There is a triable issue on whether the deputies applied blunt force to Rosales' abdomen or back. Although each deputy says no such force was applied, the circumstantial evidence "could give a reasonable jury pause." *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014). The deputies' accounts contain material discrepancies on whether, for example, Rosales flailed his arms violently, whether he continued to struggle after he was punched, and whether the deputies collaborated in preparing their use-of-force reports. Given Dr. O'Halloran's expert opinion, moreover, a reasonable jury could infer that, 24 to 72 hours before dying, Rosales suffered blunt force trauma to his abdominal area that caused his acute pancreatitis. Yet the nurses' observation notes and clinical progress reports do not

3

mention any injuries within that time frame except from the use-of-force incident, and the coroner's report indicates Rosales suffered "blunt force trauma to the body" and bruising other than where the deputies said he had been injured. Drawing all inferences in plaintiffs' favor, a reasonable jury could conclude Rosales more likely than not sustained blunt force trauma to his pancreas during the use-of-force incident.

**b.**      There is also a triable issue on whether the force applied – the punch to Rosales' face, forcible takedown and alleged blunt force to his abdomen or back – was excessive. Because Rosales was a pre-trial detainee, the Fourth Amendment's objective reasonableness test "sets the 'applicable constitutional limitations'" on the deputies' use of force. *Gibson v. County of Washoe*, 290 F.3d 1175, 1197 (9th Cir. 2002) (quoting *Pierce v. Multnomah County*, 76 F.3d 1032, 1043 (9th Cir. 1996)); *see also Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (holding that force against a pre-trial detainee violates the Fourteenth Amendment if it is "objectively unreasonable"). Force is reasonable "only when a strong governmental interest compels the employment of such force." *Deorle v. Rutherford*, 272 F.3d 1272, 1280 (9th Cir. 2001). To ascertain whether the force applied was necessary, we consider the totality of the circumstances as viewed

4

"from the perspective of a reasonable officer on the scene." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Viewed in the light most favorable to Rosales' parents, those circumstances are as follows. Although Rosales ran away from the deputies, he was unarmed, and one deputy said he did not "see anyone else around." Rosales struggled some, but he was considerably smaller than the four deputies who surrounded him, and did not threaten, punch, kick or assault anyone. While one deputy held Rosales in place, another punched him in the face without warning, and Rosales was taken to the ground and handcuffed. "[S]ome degree of physical restraint may have been necessary" on these facts, but any governmental interest was only "'diminished by the fact that the [deputies] [we]re confronted . . . with a mentally ill individual'" who had committed no crime. *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1057-58 (9th Cir. 2003) (quoting *Deorle*, 272 F.3d at 1283). Accordingly, we hold a reasonable jury could find the force applied was excessive.

**c.** Because the underlying facts turn on a credibility determination that a jury should make, we do not decide whether each deputy can be held liable for the alleged blunt force to Rosales' abdomen or back. We disagree, however, with the district court's conclusion that "plaintiff[s] cannot state whether particular officers used force against [Rosales]" or participated in that use of force. Given the

5

circumstantial evidence and the inconsistencies in each deputy's testimony, a reasonable jury could infer any one of the four deputies applied blunt force to Rosales' abdomen or back. Other deputies who had "some fundamental involvement" in that conduct would also be liable as integral participants. *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007). To the extent the district court required evidence that "*each* officer defendant used excessive force," that conclusion was error. *See Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir. 2004) ("'[I]ntegral participation' does not require that each officer's actions themselves rise to the level of a constitutional violation.").

**d**. Qualified immunity is likewise "premature" at this stage because it "may depend on the jury's resolution of disputed facts and the inferences it draws therefrom." *Santos v. Gates*, 287 F.3d 846, 855 n.12 (9th Cir. 2002). We therefore vacate the district court's grant of qualified immunity to Deputy Chaverra and decline the invitation to grant immunity to the other deputies.

**2**. Summary judgment on the Fourteenth Amendment claim was proper. Because the entire takedown incident lasted less than half a minute, the deputies violated the Fourteenth Amendment only if they had a "purpose to harm" Rosales. *Porter v. Osborn*, 546 F.3d 1131, 1139-40 (9th Cir. 2008) (applying the "purpose to harm" standard to a "quickly evolving," five-minute altercation). Rosales'

6

parents, however, "produced no evidence that the [deputies] had any ulterior motives for using force against [Rosales]." *Gonzalez*, 747 F.3d at 798. Even if the deputies applied excessive force, the fact they did so cannot, alone, establish their intent. *See id.*; *Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003) ("[S]peculation as to . . . improper motive does not rise to the level of evidence sufficient to survive summary judgment.").

    **3.** Summary judgment on the claim for denial of medical care also was proper. To violate the Eighth Amendment, an official must "know[] of and disregard[]" an inmate's serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Although there is evidence officials should have known to check Rosales for more injuries, a negligent failure to provide medical care is insufficient. *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Rosales' parents have pointed to no evidence the deputies or Dr. Ortego actually knew Rosales had serious medical needs. Even assuming Rosales presented symptoms of dehydration and abnormal sleeping, none of the deputies was working at the time the symptoms appeared, and the one time Dr. Ortego saw Rosales, he was reportedly "standing at his sink" and did not appear to be "in any medical distress." It would therefore be speculative for a jury to find the defendants – specifically – knew of Rosales' serious medical needs.

7

**CONCLUSION**

In sum, we affirm the judgment as to the claims for deprivation of familial relationship and denial of medical care and reverse the judgment on the excessive force claim and remand for trial. Each party shall bear its own costs on appeal.

**AFFIRMED in part; REVERSED AND REMANDED in part.**